UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

JOSEPH N. SKIPPER #244675,

        Plaintiff,                                Case No. 2:06-cv-199

v.                                                    Honorable Gordon J. Quist

LOUIS MIRON, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. On February 16, 2007, this Court ordered service of Plaintiff's complaint on Defendant Miron and dismissed Plaintiff's claims against Defendant Abdellatif with prejudice. On July 31, 2006, Defendant Miron filed a motion for summary judgment (docket #23) on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed a response (docket #28) and brief in support on or about August 3, 2007. Upon review, I recommend that Defendant Miron's motion for summary judgment be denied.

## Applicable Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir.), *cert. denied*, 126 S. Ct. 650 (2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th

Cir.), *cert. denied*, 126 S. Ct. 338 (2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief of the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no

reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

**Facts**

Plaintiff is presently incarcerated at the Alger Maximum Correctional Facility (LMF). As noted above, the only defendant currently remaining in this case is Corrections Officer Louis Miron. Plaintiff claims that on February 4, 2005, Defendant Miron refused to give him his food tray. When Plaintiff asked Defendant Miron why he kept depriving him of his meals, Defendant Miron responded that it was because Plaintiff kept writing grievances on him.

Plaintiff alleges that on April 3, 2005, Defendant Miron was escorting Plaintiff to the shower when he began to pull on Plaintiff's handcuffs. Plaintiff asked Defendant Miron why he was pulling on the cuffs, and Defendant Miron responded by pushing his clenched fist into Plaintiff's back. Plaintiff then asked Defendant Miron to please stop, and Defendant Miron grabbed Plaintiff and wrestled him to the floor. When Plaintiff was on the floor, Defendant Miron began punching him in face, neck and head with a closed fist. Plaintiff was then placed in leg restraints and taken to a cell where he was thrown to the floor and repeatedly kicked in the back and head by Defendant Miron. Defendant Miron allegedly stated that he had "been waiting a long time" to assault Plaintiff. Plaintiff claims that this incident was witnessed by six other inmates.

Plaintiff requested medical treatment on April 4, 2005, and was seen by health services on April 26, 2005, for injuries to the back and chest area. Plaintiff also asked for treatment for injuries to his head, which was denied by Dr. Abdellatif. Plaintiff claims that the conduct of

Defendant Miron violated his constitutional rights. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

**Discussion**

Defendant Miron claims that he is entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[1], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance

---

[1] The MDOC recently amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶¶ R, X.  The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly.  Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ T (emphasis in original).  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.  *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due.  *Id.* at ¶¶ R, DD.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances.  *Id.* at ¶ FF.  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ R, HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.* at ¶ HH.  The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.  Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process.  *Id.* at ¶ U.  "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ."  *Id.*

In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III.  *Id.* at ¶S.  In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I.

*Id.* In this situation, the Director of the Michigan Department of Corrections or his designee may respond directly to the grievance, request an investigation, or return it to the prisoner for filing at Step I. *Id.*

Defendant Miron claims that he is entitled to summary judgment because Plaintiff failed to properly grieve the alleged misconduct. Defendant Miron asserts that Plaintiff was on modified access at the time of the alleged incident, and that he failed to get a grievance form from the Grievance Coordinator as required by policy. Defendant Miron contends that because Plaintiff failed to comply with policy, he did not properly exhaust.

As noted above, Plaintiff claims that Defendant Miron subjected him to a retaliatory assault on April 3, 2005. Defendant Miron states that Plaintiff filed a grievance directly to step III on the same date, which complained of an assault by Defendant Miron, but did not state that it was motivated by a desire to retaliate for writing grievances. The step III respondent returned the grievance to Plaintiff and directed him to file it for processing at step I. (*See* Defendant's Exhibit 1.) Plaintiff filed another step III direct grievance, which was received on April 29, 2005, and was also returned to Plaintiff with instructions to submit it for processing at step I. (*See* Defendant's Exhibit 2.) Plaintiff filed a third step III direct grievance, which was received on June 6, 2005, and was also returned to Plaintiff with instructions to submit it for processing at step I. (*See* Defendant's Exhibit 3.) After Plaintiff received his third step III direct grievance, he filed a step I grievance on June 21, 2005. This grievance was rejected by the grievance coordinator Wayne Trierweiler, because Plaintiff was on modified access to the grievance procedure and did not request a grievance form. In addition, Trierweiler also noted that the incident was discussed in LMF-05-04-1172-17i, so that the grievance was duplicative. The grievance rejection was upheld at steps II and III. In the appeals to the grievance, Plaintiff claimed that he did request grievance forms from the grievance

coordinator. In his affidavit, Trierweiler attests that Plaintiff never requested a step I form. (*See* Defendant's Exhibit 5.)

Under Michigan Department of Corrections policy, a prisoner is placed on modified access for filing "an excessive number of grievances which are frivolous, vague, duplicative, non-meritorious, raise non-grievable issues, or contain prohibited language. . .or [are] unfounded . . . ." MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ II. (effective April 28, 2003). The modified access period is ninety days and may be extended an additional thirty days for each time the prisoner continues to file a prohibited type of grievance. *Id.* While on modified access, the prisoner only can obtain grievance forms through the Step I coordinator, who determines whether the issue is grievable and otherwise meets the criteria under the grievance policy. *Id.*, ¶ LL.

In the response to the motion for summary judgment, Plaintiff states that he made numerous attempts to obtain a grievance form from the grievance coordinator, but each request was denied. In support of this claim, Plaintiff attaches copies of grievance form requests dated April 4, April 14, April 22, April 27, and May 15 of 2005, in which he requests a step I grievance form for purposes of filing a grievance regarding the alleged assault by Defendant Miron. (*See* Exhibits A and B, which are attached to Plaintiff's brief in opposition to the motion for summary judgment.) Plaintiff claims that he subsequently filed a step I grievance on June 21, 2005, without obtaining the form from the grievance coordinator because he felt he had no other option. In the opinion of the undersigned, there is a genuine issue of material fact with regard to whether Plaintiff properly requested a grievance form while on modified access.

In addition, the undersigned notes that Defendant Miron attaches a copy of LMF-05-04-1172-17i, as well as the responses to his brief in support of the motion for summary judgment. (*See* Defendant's Exhibit 4.) In the step I grievance, Plaintiff states:

> On 4-3-05 I ask Sgt. Hursh to have me to be seen by a doctor for the serious injuries I received from the assault and batter by Prison Guard Louis Miron Clo No. 057349. I had serious pain from the head area and face. My foot and my wrist was also injured. Yet, Sgt. Hursh had failure to protect with deliberate indifference to a serious as well as critical medical need violation of P.D. Code 04.05.110 and P.D. Code 01.05.120.

Such assertions are arguably sufficient to give notice to prison officials regarding the alleged assault by Defendant Miron. Moreover, the fact that Plaintiff's subsequent grievance on Defendant Miron was determined by prison officials to be duplicative supports this conclusion. Therefore, the undersigned concludes that Defendant Miron has failed to meet his burden of showing that Plaintiff failed to exhaust his administrative remedies.

## Recommended Disposition

For the foregoing reasons, I recommend that Defendant Miron's motion for summary judgment (docket #23) be denied.

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   February 13, 2008

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).