UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOSEPH N. SKIPPER,

    Plaintiff,

v.                                          Case No. 2:06-cv-199

                                                HON. GORDON J. QUIST

LOUIS MIRON, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff is presently incarcerated at the Baraga Maximum Correctional Facility (LMF). Corrections Officer Louis Miron is the remaining defendant in this case. Plaintiff claims that on February 4, 2005, Defendant Miron refused to give Plaintiff his food tray. When Plaintiff asked Defendant Miron why he kept depriving him of his meals, Defendant Miron allegedly responded that it was because Plaintiff kept writing grievances on him.

Plaintiff alleges that on April 3, 2005, Defendant Miron was escorting Plaintiff to the shower when he began to pull on Plaintiff's handcuffs. Plaintiff asked Defendant Miron why he was pulling on the cuffs, and Defendant Miron responded by pushing his clenched fist into Plaintiff's back. Plaintiff then asked Defendant Miron to please stop, and Defendant Miron grabbed Plaintiff and wrestled him to the floor. Defendant Miron then began punching Plaintiff in face, neck and head with a closed fist. Plaintiff was then placed in leg restraints and taken to a cell where he was thrown to the floor and repeatedly kicked in the back and head by Defendant Miron. Defendant Miron allegedly stated that he had "been waiting a long time" to assault Plaintiff. Plaintiff claims that this incident was witnessed by six other inmates.

Plaintiff requested medical treatment on April 4, 2005, and was seen by health services on April 26, 2005, for injuries to the back and chest area. Plaintiff also asked for treatment for injuries to his head, which was denied by Dr. Abdellatif. Plaintiff claims that the conduct of Defendant Miron violated his constitutional rights. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

Defendant moves for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co.*

*v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendant Miron asserts that Plaintiff cannot factually support his claim that Defendant used excessive force. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

Plaintiff's claim involving the use of force must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley*, 475 U.S. at 321-22.

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat

"reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321); *accord McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). Physical restraints are constitutionally permissible where there is penological justification for their use. *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996); *Hayes v. Toombs*, No. 91-890, 1994 WL 28606, at * 1 (6th Cir. Feb. 1, 1994); *Rivers v. Pitcher*, No. 95-1167, 1995 WL 603313, at *2 (6th Cir. Oct. 12, 1995).

Plaintiff's version of the events on April 3, 2005, is that Defendant Miron was pulling on Plaintiff's tether causing Plaintiff unnecessary pain. Plaintiff protested and Defendant Miron allegedly struck Plaintiff and then took Plaintiff to the floor and struck him again. Plaintiff has attached affidavits from prisoner Lorenzo Anthony, which supports Plaintiff's version, and from prisoners Hawkins, Lindsay and Little, who claim that Defendant Miron assaulted Plaintiff. It is undisputed that Defendant Miron and other correctional officers used some force against Plaintiff on April 3, 2005. Defendant Miron explains that Plaintiff became disruptive during an escort and assaulted Defendant Miron. Defendant Miron took Plaintiff to the floor in an effort to control Plaintiff. Other officers responded and assisted. Plaintiff was placed in leg restraints and escorted back to his cell. Plaintiff was issued a major misconduct ticket for assault and battery and found guilty after a hearing. The entire incident happened very quickly. The hearing officer explained:

> Hearing Officer watched the video. The video shows the prisoner being taken out of cell 131 at 9 35 29. The prisoner is walking faster than Miron, the escorting officer. Miron drops a dufflebag by 127 and then it appears that problems start developing based on the physical actions of the prisoner and the officer. Prisoner appears to brace himself by his wide stance of his stride. He is facing the officer. He turns his body even more in the officer's direction at 09 35 48. At 09 35 50, the prisoner bends his knees as to get a stable stance and appears to ram his shoulder into the officer. He swings past the officer and the officer takes control of him at 09 35 51 and directs him to the ground. Prisoner is struggling and moves himself

> from the center of the hall towards the shower, on his back, while Irvine is running to the scene at 09 35 52. Kennedy arrives at 09 35 58. Other staff arrives and a prisoner from 127 is placed in 131. At 09 40 03, prisoner is placed in cell 127.

Plaintiff was found guilty of assault and battery because of his own behavior and conduct during the escort. The hearing officer concluded:

> On 4/3/05 the prisoner made non-consensual physical contact with the officer when he shoved his shoulder into the officer. This contact was intentional as the prisoner turned towards the officer and hit the officer. This was done in anger as at the time the prisoner was verbally abusive to the officer. This type of contact, deliberately done, is also inherently abusive. Prisoner claims that "Prisoner guard Miron started pulling on the teather cuffs from behind. I told him to stop pulling on the teather because there when place on me, were tight on my wrist. As I continued walking up the C wing, he snached on the teathers again. I then felt him wrap the teather strap several times around his hand pushing me from the center of my back. I then took hold of the strap from behand. He (Miron) then grabbed me throwing me to the floor." [sic] Prisoner is not believed. The very video that the prisoner requested showed a different story. If the restraints were tight, it was because the prisoner was walking faster than the officer. The officer didn't place the prisoner on the floor until the prisoner turned and assaulted the officer. The officer's version was supported by the video. Officer factual and credible in his claims and supported by the video and statement from Irvine. Charge upheld.

It is apparent that Plaintiff assaulted Defendant Miron and Defendant Miron simply responded to Plaintiff's action and placed Plaintiff under control until other officers arrived to help. The entire incident occurred quickly and took place in a matter of seconds. Plaintiff never sustained any significant injury. The affidavits by the prisoners which support Plaintiff's claims do not contradict the hearing officer's conclusions. The prisoners clearly did not witness the entire incident. Plaintiff has not established that Defendant Miron used excessive force or violated the Eighth Amendment.

Plaintiff alleges that he was also denied meals by Defendant Miron. Defendant asserts that Plaintiff was not denied meals and on some occasions Plaintiff refused his meal tray.

In the opinion of the undersigned, even if true, the isolated denials of food trays do not rise to the level of an Eighth Amendment cause of action. *See Hartsfield v. Vidor,* 199 F.3d 305, 310 (6th Cir. 1999) (stating that "deprivations of fresh water and access to the toilet for a 20-hour period, while harsh, were not cruel and unusual punishment" (citing *Stephens v. Carter County Jail*, 816 F.2d 682 (6th Cir.1987)). Only those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave for an Eighth Amendment claim. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992).

Plaintiff asserts that Defendant assaulted him in retaliation for Plaintiff's grievance filings. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the Defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The factual evidence establishes that Plaintiff assaulted Defendant and Defendant merely responded to Plaintiff's actions by taking control of Plaintiff and returning him to his prison cell. Plaintiff cannot factually support his claims. Similarly, in the opinion of the undersigned, Plaintiff cannot establish that Defendant Miron took any action that would deter an ordinary person from engaging in future protective conduct. In fact, if the incident occurred as Plaintiff described, an ordinary person would cry foul and quickly file grievances and complaints with proper authorities.

Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the Plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the Plaintiff. Part of the analysis is to determine whether there are any genuinely

disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated Plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect

a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). In the opinion of the undersigned, defendant is entitled to qualified immunity because, as explained earlier, Plaintiff cannot factually sustain his claims to show any violations of clearly established law.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant's motion for summary judgment. Accordingly, it is recommended that Defendant's Motion for Summary Judgment (Docket #49) be granted and that this case be dismissed in its entirety. If the Court adopts the recommendations of the undersigned, Plaintiff's motions to produce documents (Docket #53) and motion for discovery (Docket #69), and

Defendant's motions for extension of time to complete discovery (Docket #58), for leave to take deposition (Docket #60), and for extension of time to submit pretrial narrative statement (Docket #73) are properly denied.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal. It is recommended that should the Plaintiff appeal this decision, the court assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he should be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

     /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   September 18, 2008